IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| COURTNEY MEANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 14-2606-JDT-dkv |
| | ) | |
| MATTHEW HAYLES, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER DISMISSING COMPLAINT WITHOUT PREJUDICE
AND GRANTING LEAVE TO AMEND

On August 4, 2014, Plaintiff Courtney Means, Tennessee Department of Correction ("TDOC") prisoner number 375663, who is currently an inmate at the Turney Center Industrial Complex in Only, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 addressing his previous confinement at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, accompanied by a motion seeking leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) In an order issued on August 5, 2014, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Security Threat Group ("STG") Coordinator Matthew Hayles, Unit Manager William Bryant, Officer First Name Unknown ("FNU") Jackson, TDOC Director of Classification Brandon Maloney, former WTSP Warden Jerry Lester, former Acting WTSP

Warden Dwight Barbee, Captain FNU Sweat, Captain FNU Munford, Assistant Warden FNU Dickerson, and TDOC Commissioner Derrick Schofield, who was erroneously sued as "Derrick Scholfield."[1] Each of the individual Defendants is sued in his or her individual and official capacities. (ECF No. 1 at PageID 5.)

The complaint alleges that, on February 12, 2013, Plaintiff was sent to the STG Program at the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee, because of the murder of his cousin at the Northwest Correctional Complex in Tiponville, Tennessee. (*Id.* ¶ 1.) Plaintiff renounced all gang memberships and participated fully in the STG Program. (*Id.* ¶ 2.) In July 2013, TDOC revised its STG policy (TDOC Policy #506.26) into the Security Management Unit ("SMU") policy. The STG program at BCCX was terminated and all inmates housed there were shipped to the WTSP. (*Id.* ¶ 3.) Plaintiff alleges that he "disagreed with my placement into the SMU Program, because not all inmates in the Bledsoe Program were shipped to the new Program." (*Id.* ¶ 4.) He also claims that, "[a]lthough I had renounced any and all affiliation with gangs, the transfer to West Tennessee State Prison put me in danger from existing gangs." (*Id.* ¶ 5.) Plaintiff "exhausted all prison remedies to obtain transfer to a safe environment, but was refused and/or ignored." (*Id.* ¶ 6.) Plaintiff continued in the SMU Program and graduated on January 7, 2014. (*Id.* ¶ 9.)

In anticipation of his completion of the SMU Program, Plaintiff contacted Defendants Maloney, Lester, Hayles, and Bryant in order to obtain a transfer away from the WTSP. (*Id.*

---

[1] The Clerk is directed to modify the docket to reflect the correct spelling of Defendant Schofield's last name.

¶¶ 10 & 12, at PageID 5-6.) Plaintiff "asked to be sent to a prison where I could do my time peacefully and be safe from all violence." (*Id.* ¶ 11, at PageID 6.) Plaintiff also presented these issues to the SMU Review Board and the Unit Team. (*Id.* ¶ 13.)

TDOC policy provides that inmates who successfully complete the SMU Program will be scheduled for a reclassification hearing. (*Id.* ¶ 14.) The SMU Review Board is responsible for providing security recommendations to the Classification Panel for consideration. (*Id.* ¶ 15.) Upon completion of the SMU Program, Plaintiff made Defendants aware of the danger he was in. (*Id.* ¶ 16.) Defendants refused to reclassify Plaintiff and totally ignored his concerns. (*Id.* ¶¶ 17-18.) Plaintiff's concerns for his safety were not documented, as required by TDOC policy. (*Id.* ¶ 21.)

Instead of transferring Plaintiff to another prison, he was "sent to the compound of West Tennessee State Prison and placed in Unit 12." (*Id.* ¶ 22.) Defendant Bryant, who had been the Unit Manager of the SMU Program, was reassigned as Unit Manager of Units 11 and 12. (*Id.* ¶ 23.) Defendant Bryant was aware of Plaintiff's concerns for his personal safety but did nothing to protect him. (*Id.* ¶ 24, at PageID 7.) During the next two weeks, Plaintiff frequently visited the WTSP Classification Coordinator, Ms. Humphries, who is not a party to this action, "trying to get shipped from the danger." (*Id.* ¶ 25.) No action was taken. (*Id.* ¶ 26.) Plaintiff also discussed his concerns with Defendants Lester, Dickerson, Sweat, and Mumford during morning inspections. (*Id.* ¶ 27.) According to Plaintiff, "[t]he tension increased daily, and I knew I was in real danger." (*Id.* ¶ 28.) Plaintiff was

transferred to Unit 11, which is next door to Unit 12, but he contends that "[t]his . . . was no real transfer at all, I was still in danger." (*Id.* ¶ 30.)

On March 20, 2014, at approximately 2:30 p.m., Plaintiff was returning to Unit 11. (*Id.* ¶ 31.) The doors to Units 11A and 11B should have been secured at that time. (*Id.* ¶ 32.) Once Plaintiff stepped into the core area, Defendant Jackson "opened the doors to 11B and allowed five inmates out of door without a pass." (*Id.* ¶ 33.) "These men by post orders and Policy #506.17 should not have been out of the Unit." (*Id.* ¶ 34.) Plaintiff was immediately attacked and stabbed six times. (*Id.* ¶ 35.) Although Defendant Jackson should have seen the attack, "no Code was called." (*Id.* ¶ 36.) Counselor Carswell and CCO Agnew, who are not parties to this action, saw the incident and called for assistance once it was over. (*Id.* ¶ 37.) "However, no Code was called." (*Id.* ¶ 38.)[2] Plaintiff was taken to Lauderdale Community Hospital and, upon his discharge, was placed in the prison infirmary. (*Id.* ¶¶ 39-40.)

Plaintiff was served with a disciplinary write-up for STG activity because he had been attacked by gang members. (*Id.* ¶ 41, at PageID 8.) Although Plaintiff had previously renounced his gang memberships, he was convicted and sent to the "hole" only because his attackers were gang members. (*Id.* ¶ 42.) TDOC records still list Plaintiff as STG even though he had renounced his gang memberships and completed the SMU Program. (*Id.* ¶ 43.) TDOC refuses to remove the STG designation from Plaintiff's file. (*Id.* ¶ 44.)

---

[2] The complaint does not explain the distinction, if any, between calling for assistance and calling a Code.

4

Plaintiff contends that this refusal "violates the purspose and the policies and state laws governing the programs." (*Id.* ¶ 45.)

Plaintiff seeks compensatory and punitive damages. (*Id.* at PageID 8-9.) He also seeks an order directing the TDOC to change Plaintiff's records to reflect that he is no longer STG. (*Id.* at PageID 9.)

Plaintiff also alleges that he previously filed a lawsuit about his assignment to the SMU Program at the WTSP (*id.* ¶ 7, at PageID 5), but that, "[w]ithout legal aid and without knowledge of law and proper legal form, I soon became lost in the legal battle and unable to afford an attorney, I dropped the suit" (*id.* ¶ 8). By way of background, on October 24, 2013, Plaintiff filed a complaint pursuant to 42 U.S.C. § 1983 against the TDOC, Defendants Lester, Bryant, and Maloney, and other parties, addressing his transfer to the SMU Program at the WTSP after the closure of the STG unit at the BCCX. *Means v. Lester,* No. 2:13-cv-02836-JDT-cgc (W.D. Tenn. Feb. 26, 2014) (dismissed for failure to state a claim).[3]

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

---

[3] In an order issued on January 15, 2014, the Court dismissed the complaint in case number 13-2836 *sua sponte* for failure to state a claim but delayed the entry of judgment for thirty days to permit Plaintiff to file an amended complaint against the defendants in their individual capacities that cured the deficiencies identified in that order. (No. 13-2836, ECF No. 6.) After Plaintiff failed to file an amended complaint, the Court issued an order on February 26, 2014, directing the entry of judgment. (*Id.*, ECF No. 7.) Judgment was entered on February 27, 2014. (*Id.*, ECF No. 8.)

>    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). "[P]leadings that . . . are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Id.* (citing *Neitzke*, 490 U.S. at 328-29).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.

*Id.* at 471 (citations and internal quotation marks omitted).

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out

7

the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

To state a claim under 42 U.S.C. § 1983,[4] a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Alleged violations of TDOC policy are not actionable under § 1983. *See Storm v. Swiger*, No. 4:07 CV 2387, 2007 WL 3171491, at *3 (N.D. Ohio Oct. 29, 2007) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993), *overruled in part on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995)).[5]

---

[4] Section 1983 provides: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

[5] In *Levine*, 986 F.2d at 1515, a habeas case, the Court of Appeals stated that "[a] state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable."

Defendants are employed by the TDOC. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Any claims against Defendants in their official capacities is asserted against the State of Tennessee.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S.

at 71. Therefore, the Court DISMISSES Plaintiff's claims against Defendants in their official capacities pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2).

Plaintiff's claims against Defendants Lester, Bryant, and Maloney arising from his assignment to the SMU Program at the WTSP are barred by claim preclusion or *res judicata*. "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979) (ellipses and internal quotation marks omitted). "Courts apply the doctrine of *res judicata* to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). "Under the doctrine of claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Rivet v. Regions Bank of La.,* 522 U.S. 470, 476 (1998) (internal quotation marks and alteration omitted); *see also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (same).

> Claim preclusion applies when (1) there is a final decision on the merits in the first action by a court of competent jurisdiction; (2) the second action involves the same parties, or their privies, as the first; (3) the second action raises an

issue actually litigated or which should have been litigated in the first action; and (4) there is an identity of claims between the first and second actions.

*Heike v. Cent. Mich. Univ. Bd. of Trs.*, 573 F. App'x 476, 480 (6th Cir. 2014).

Each of these requirements has been satisfied. The Court issued a judgment on the merits in case number 13-2836 dismissing the action for failure to state a claim.[6] Defendants

---

[6] It has not been conclusively resolved whether a dismissal under 28 U.S.C. § 1915(e)(2) and 1915A(b) is "on the merits." In *Denton v. Hernandez,* 504 U.S. 25, 34 (1992), the Supreme Court, reviewing a previous version of those statutes, stated that,

> [b]ecause a § 1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations. It could, however, have a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions. *See, e.g., Bryant v. Civiletti*, 214 U.S.App.D.C. 109, 110–111, 663 F.2d 286, 287–288, n. 1 (1981) (§ 1915(d) dismissal for frivolousness is res judicata); Warren v. McCall, 709 F.2d 1183, 1186, and n. 7 (CA7 1983) (same); cf. *Rogers v. Bruntrager*, 841 F.2d 853, 855 (CA8 1988) (noting that application of res judicata principles after § 1915(d) dismissal can be "somewhat problematical"). Therefore, if it appears that frivolous factual allegations could be remedied through more specific pleading, a court of appeals reviewing a § 1915(d) disposition should consider whether the district court abused its discretion by dismissing the complaint with prejudice or without leave to amend. Because it is not properly before us, we express no opinion on the Ninth Circuit rule, applied below, that a *pro se* litigant bringing suit *in forma pauperis* is entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect. *E.g., Potter v. McCall*, 433 F.2d 1087, 1088 (CA9 1970); *Noll v. Carlson*, 809 F.2d 1446 (CA9 1987).

In case number 13-2836, the Court gave Plaintiff notice and an opportunity to cure the deficiencies in his complaint prior to dismissing his claims with prejudice, as required by *LaFountain v. Harry,* 716 F.2d 944, 951 (6th Cir. 2013). Even before *LaFountain,* several Sixth Circuit decisions have affirmed the dismissal of subsequent suits under § 1915(e)(2) as barred by claim preclusion. *See,e.g., Murray v. Reed,* 69 F. App'x 246 (6th Cir. 2003); *Johnson v. United States,* 37 F. App'x 754 (6th Cir. 2001); *Haddad v. Mich. Nat'l Corp.*, 34 F. App'x 217, 218 (6th Cir. 2002); *Taylor v. Reynolds,* 22 F. App'x 537, 539 (6th Cir. 2001); *see also Lierer v. Ohio Bur. of Motor Vehicles Compliance Unit,* 246 F. App'x 372 (6th Cir. 2007) (per curiam) (approving dismissal of official-capacity claim as barred by res judicata, reversing dismissal of

(continued...)

11

Bryant, Lester, and Maloney were parties to this case and to case number 13-2836. Case number 13-2836, like this case, involved claims that Plaintiff was erroneously assigned to the SMU Program at the WTSP after the closure of the STG unit at the BCCX. Any difference in the allegations and legal theories in this suit and case number 13-2846 does not entitle Plaintiff to litigate his assignment to the SMU Program in a second lawsuit. "A plaintiff should have litigated two claims in his or her first suit, and thus may not litigate the second claim later, where, as here, the two claims arose from the same transaction or series of transactions." *Heike*, 573 F. 3d at 482 (internal quotation marks omitted). Finally, this case, like case number 13-2836, includes claims under 42 U.S.C. § 1983.

Although the remaining Defendants were not parties to case number 13-2836, Plaintiff's claims against them arising from his assignment to the SMU Program at the WTSP are barred by collateral estoppel or issue preclusion.

> Four specific requirements must be met before collateral estoppel may be applied to bar litigation of an issue: (1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

---

[6](...continued)
individual-capacity claim that was not alleged in first suit, and noting that district court did not address whether individual-capacity claim was barred by issue preclusion). Although the unpublished decision in *Stephens v. Hayes,* 374 F. App'x 620, 622 (6th Cir. 2010), appears to reach a different result, that decision is inconsistent with the subsequent published decision in *LaFountain*, 716 F.3d at 951, which address the circumstances under which a case may be dismissed with prejudice under §§ 1915(e)(2) and 1915A(b)(1).

*Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009); *see also Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650 (6th Cir. 2007) (same). These requirements also have been satisfied. The legality of Plaintiff's assignment to the WTSP SMU Program was raised and actually litigated in case number 13-2836, a decision was necessary to the outcome of the prior proceeding, a final judgment on the merits was entered, and Plaintiff had a full and fair opportunity to litigate the issue. Therefore, Plaintiff's claims against the remaining defendants regarding his assignment to the WTSP SMU Program are barred by collateral estoppel or claim preclusion.

The complaint fails to state a due process claim against any Defendant arising from the failure to reclassify Plaintiff after his completion of the SMU Program or the failure to remove the STG designation from Plaintiff's records. An inmate's right to due process arises only if a restriction implicates a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In general, an inmate does not have a liberty interest in a particular security classification or in freedom from administrative segregation. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newell v. Brown*, 981 F.2d 880, 883 (6th Cir. 1992); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). Thus, courts have rejected challenges to even the most restrictive security classifications. *Harbin-Bey v. Rutter*, 420 F.3d 571, 576-77 (6th Cir. 2005) (designation as member of a STG and permanent restrictions imposed as a result of that designation not an atypical and significant hardship in relation to the ordinary incidents of

prison life); *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004) ("Ford's designation as a 'Security Threat Group Member' is nothing more than a security classification used by the prison. Because Ford does not have a constitutional right to a particular security level or classification, he fails to state a claim."); *Ford v. Martin*, 49 F. App'x 584, 586 (6th Cir. 2002) (rejecting claim that defendants violated plaintiff's rights to due process and equal protection when they designated him an STG member without a hearing, explaining that, "[t]o the extent that Ford has argued that the defendants improperly changed his security classification, such reclassification does not constitute an atypical and significant hardship on him because a prisoner has no right to a particular security level"); *Cromer v. Braman*, No. 1:07-cv-009, 2009 WL 806919, at *3 (W.D. Mich. Mar. 25, 2009) (rejecting due process challenge to designation as an STG member). The complaint does not allege that Plaintiff's designation as an STG member presents a significant and atypical hardship. The complaint also does not allege that WTSP officials failed to conduct a classification review; instead, Plaintiff is unhappy with his initial housing assignment after completion of the SHU Program.

The complaint does not state a valid claim against any Defendant for issuance of a false disciplinary write-up. As a preliminary matter, the complaint does not identify the officer who issued the write-up. An inmate ordinarily cannot sue for the issuance of a false disciplinary charge where there is a fair hearing on that charge. *Jackson v. Madery*, 158 F. App'x 656, 662-63 (6th Cir. 2005) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in

14

a fair hearing. . . . Jackson was provided due process hearings for the misconduct charges; as such, his due process rights were not violated and he may not maintain a § 1983 claim for the allegedly false misconduct reports." (citations omitted)); *see also McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) ("McMillan's complaint with regard to the false charges fails to state a Fourteenth Amendment claim. . . . Even if McMillan had a liberty interest in remaining free from lock up, loss of package privileges, and a fine, his due process right was fulfilled by his disciplinary hearing."); *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused."); *Mujihad v. Harrison*, No. 97-6366, 1998 WL 940243, at *2 (6th Cir. Dec. 23, 1998) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable pursuant to § 1983."). Here, Plaintiff makes no complaint about the procedures employed during his disciplinary hearing. It is unclear whether Plaintiff was convicted of the charge. His only complaint appears to be that he was issued a write-up and sent to the "hole" to await a disciplinary hearing. Those allegations do not state a viable claim.

Plaintiff's claim that Defendants failed to protect him from his fellow inmates arises under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "'minimal civilized measure of life's necessities,'" *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate

indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> *[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

Although a failure to protect an inmate from the risk of violence from other prisoners might satisfy the objective component of an Eighth Amendment claim, Plaintiff's complaint does not sufficiently allege that he faced a "substantial risk of serious harm." *Greene v. Bowles,* 361 F.3d 290, 294 (6th Cir. 2004) (internal quotation marks omitted); *see also Bishop,* 636 F.3d at 766 ("To establish a constitutional violation based on failure to protect, a prison inmate must first show that the failure to protect from risk of harm is objectively sufficiently serious." (internal quotation marks omitted)). The complaint alleges that Plaintiff believed he was at risk of harm at the WTSP and that he was subsequently assaulted. There are no allegations explaining the basis for Plaintiff's fear; therefore, it is not possible to conclude that Defendants should have perceived that the risk of harm to Plaintiff was substantial.

For similar reasons, the complaint does not adequately allege the subjective component of an Eighth Amendment violation. The complaint does not identify the Defendants to whom Plaintiff communicated his fears for his personal safety. The allegations about Plaintiff's supposed entitlement to reclassification after completion of the SMU Program are commingled with those addressing his safety concerns. It is necessary to assess whether each of the ten Defendants actually perceived that a substantial risk to Plaintiff's personal safety existed and whether each Defendant was deliberately indifferent to that risk.

The subjective component is not satisfied even as to Defendant Jackson, who opened the doors to Unit 11B and let five inmates out without a pass. That Jackson might have been

negligent or might have violated WTSP policies does not establish that he was aware of the risk to Plaintiff's safety and deliberately disregarded that risk.

Therefore, Plaintiff's complaint is subject to dismissal for failure to state a claim on which relief may be granted, under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every sua sponte dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a sua sponte dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").

The Court cannot conclude that any amendment to Plaintiff's complaint against Defendants in their individual capacities would be futile as a matter of law. Therefore, leave to amend is GRANTED. Any amended complaint must be filed within twenty-eight days after the date of this order.

Plaintiff is advised that an amended complaint supersedes the original complaint and must be complete in itself without reference to the prior pleading. The text of the complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

IT IS SO ORDERED.

                                                  s/ **James D. Todd**
                                                  JAMES D. TODD
                                                  UNITED STATES DISTRICT JUDGE